# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SHANE CARL MOBERG,**

      **Plaintiff,**

**v.**                                                                              **Case No:   6:19-cv-891-Orl-LRH**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OF DECISION[1]

Shane Carl Moberg ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits. Doc. No. 1. Claimant raises one argument challenging the Commissioner's final decision, and, based on that argument, requests that the matter be reversed and remanded for further administrative proceedings. Doc. No. 18, at 12, 27. The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and should be affirmed. *Id.* at 27. For the reasons stated herein, the Commissioner's final decision is **AFFIRMED**.

### I.  PROCEDURAL HISTORY.

On October 17, 2017, Claimant filed an application for disability insurance benefits, alleging a disability onset date of June 1, 2015. R. 10, 165–69. Claimant's application was denied initially and on reconsideration, and he requested a hearing before an ALJ. R. 104, 111, 118. On October

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. *See* Doc. Nos. 11, 14–15.

10, 2018, a hearing was held before the ALJ, at which Claimant was represented by an attorney. R. 52–75. Claimant and a vocational expert ("VE") testified at the hearing. *Id.*

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled. R. 10–22. Claimant sought review of the ALJ's decision by the Appeals Council. R. 162–64. On March 14, 2019, the Appeals Council denied the request for review. R. 1–6. Claimant now seeks review of the final decision of the Commissioner by this Court. Doc. No. 1.

## II. THE ALJ'S DECISION.[2]

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 404.1520(a). R. 10–22.[3] The ALJ found that Claimant met the insured status requirements of the Social Security Act through December 31, 2020. R. 12. The ALJ concluded that Claimant had not engaged in substantial gainful activity from since June 1, 2015, the alleged onset date. *Id.* The ALJ found that Claimant suffered from the following severe impairments: fibromyalgia; major depressive disorder, moderate; generalized anxiety disorder; and body dysmorphic disorder. *Id.* The ALJ concluded that Claimant did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 13–15.

---

[2] Upon a review of the record, I find that counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum. Doc. No. 18. Accordingly, I adopt those facts included in the body of the Joint Memorandum by reference without restating them in entirety herein.

[3] An individual claiming Social Security disability benefits must prove that he or she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy. *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520).

Based on a review of the record, the ALJ found that Claimant had the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk 6 hours total in an 8-hour workday, sit 6 hours total in an 8-hour workday, frequently climb ramps, stairs, ladders, ropes, and scaffolds, stoop, kneel, crouch, and crawl. He is able to understand, remember, and carry out simple and detailed tasks and instructions and some complex instructions and is able to adapt to gradual or infrequent changes in the work setting.

R. 15.

After considering the record evidence, Claimant's RFC, and the testimony of the VE, the ALJ found that Claimant was capable of performing past relevant work as a salesperson, flooring, which the ALJ found did not require work-related activities precluded by Claimant's RFC. R. 21. Accordingly, the ALJ concluded that Claimant was not disabled from the alleged disability onset date through the date of the decision. R. 22.

### III. STANDARD OF REVIEW.

Because Claimant has exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well

as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

**IV. ANALYSIS.**

In the Joint Memorandum, which I have reviewed, Claimant raises one assignment of error: the ALJ failed to properly weigh the medical opinions of record when determining Claimant's RFC. Doc. No. 18, at 12. Accordingly, this is the only issue that I address.

Claimant filed his application for disability insurance benefits on October 17, 2017. R. 10, 78, 165. Effective March 27, 2017, the Social Security Administration implemented new regulations related to the evaluation of medical opinions, which provide, in pertinent part, as follows:

> (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 404.1520c(a). Subparagraph (c) provides that the factors to be considered include: (1) supportability; (2) consistency; (3) relationship with the claimant (which includes consideration of

the length of treatment relationship; frequency of examination; purpose of treatment relationship; extent of treatment relationship; and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *Id.* § 404.1520c(c).

Pursuant to the new regulations, the Commissioner is not required to articulate how he "considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). Courts have found that "[o]ther than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness." *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citing *Mudge v. Saul*, No. 4:18CV693CDP, 2019 WL 3412616, *4 (E.D. Mo. July 29, 2019)). *See also Knecht v. Comm'r of Soc. Sec.*, No. 3:19-CV-000759, 2020 WL 4530725, at *7 (M.D. Pa. Aug. 6, 2020) ("Supportability and consistency are the most important factors in determining the persuasiveness of a medical source's medical opinion." (citing 20 C.F.R. § 404.1520c(b)(2)); *Stem v. Comm'r of Soc. Sec.*, No. CV 2:19-725, 2020 WL 4548056, at *2 n.1 (W.D. Pa. Aug. 6, 2020) (citations omitted) ("Consistency and supportability are the only factors ALJs must address in their written opinions.").

Here, Claimant argues that the ALJ erred in her analysis regarding the opinions of psychological consultative examiner, W. Eyring, Psy.D., as well as Claimant's treating psychiatrist, Parwati Maddali, M.D. Doc. No. 18, at 12–19.

In the decision, the ALJ discussed the medical records of both Dr. Eyring and Dr. Maddali and their associated medical opinions. Dr. Eyring, a licensed psychologist, completed a disability

evaluation of Claimant at the request of the Office of Disability Determinations. *See* R. 283–85 (Exhibit 2F). In the decision, the ALJ noted as follows regarding Dr. Eyring's opinions:

> W. Eyring, Psy.D. indicated that the claimant had an intact ability to understand and remember simple instructions with mild limitation in the ability to attend and follow through on complex tasks, mild impairment in judgment, mild impairment in interacting with others, and mild to moderate impairment in responding to day-today stress. This opinion appeared generally consistent with the contemporaneous exam findings, which were grossly unremarkable. Specifically, Dr. Eyring observed intact reasoning skills, good social judgment, average intellectual functioning, capacity to name current and former presidents, and the ability to name objects (Ex. 2F, 3). The claimant appeared "somewhat confused" about the location of the interview and described a range of symptoms but Dr. Eyring did not report clinical evidence of concentration, persistence, pace, memory, or comprehension deficits. Although Dr. Eyring did not tender a corresponding explanation linking the functional assessment to specific signs, the broad assessments align with the record as a whole, specifically, the claimant's conservative treatment through Dr. Maddali. While Dr. Eyring did not have the opportunity to evaluate the claimant longitudinally, the stable mental status exam findings detailed above did not provide a basis from which to depart from Dr. Eyring's broad functional assessments. As such, the undersigned finds Dr. Eyring's opinion highly persuasive.

R. 20.

Dr. Maddali is Claimant's treating psychiatrist. *E.g.*, R. 296–306. On August 27, 2018, Dr. Maddali completed a "Medical Opinion Re: Ability to Do Work-Related Activities (Mental)" form. R. 341–43. On that form, Dr. Maddali opined, among other things, that "excessive fatigue combined with depression prevents [Claimant] from focusing or sustaining tasks," affecting Claimant's ability to engage in unskilled work. R. 341. Dr. Maddali also indicated that Claimant's "inability to focus, stay alert and comprehend instructions" affected his ability to do semiskilled or skilled work. R. 342. Dr. Maddali further opined that Claimant had significant sensitivity to criticism and an inability to maintain a schedule. *Id.* Finally, Dr. Maddali wrote that Claimant would have difficulty working at a regular job on a sustained basis because Dr. Maddali had known Claimant for twelve years; Dr. Maddali has observed Claimant make several attempts to seek and maintain work; and Claimant had two suicide attempts. *Id.* Dr. Maddali concluded

that due to his impairments, Claimant would be absent from work more than four days per month. *Id.*

> The ALJ found Dr. Maddali's opinions "minimally persuasive" as follows:
>
> The undersigned finds Dr. Maddali's opinion minimally persuasive (Ex. 11F). Dr. Maddali did not tender a supporting explanation linking the opined limitations to objective signs. Dr. Maddali did not provide an explanation to support a determination that the claimant would be absent more than four days per month. The explanations Dr. Maddali provided regarding mental functions required for work lack[] supportability and consistency with contemporaneous records and the record as a whole. For example, Dr. Maddali noted that excessive fatigue and depression prevents the claimant from focusing on or sustaining tasks but this treating source's exam notes consistently indicate that the claimant appeared attentive during all exam after the alleged onset date (Exs. 4F, 2-3, 4-5, 6-7, 8-9, 11-12; 6F, 2-3; 12F, 11, 12-13; 13F, 1-2, 3-4). Dr. Maddali reported that the claimant has pronounced limitations with comprehending instructions but the previously cited exams indicate that the claimant has intact cognitive functioning. Moreover, the generalized debility Dr. Maddali conveyed is not consistent with the conservative long-term treatment. Given these supportability and consistency factors, the undersigned finds Dr. Maddali's opinion minimally persuasive.

R. 21.

Claimant argues that the ALJ mischaracterized the record by stating that Dr. Eyring's opinions were consistent with contemporaneous examination findings because, according to Claimant, Dr. Maddali "consistently documented [Claimant's] symptoms of depression and anxiety." Doc. No. 10, at 12. Claimant also argues that the ALJ erred in stating Dr. Maddali's treatment of Claimant was "conservative" without explanation. *Id.* at 14. Further, Claimant contends that the ALJ mischaracterized Dr. Maddali's exam findings as "stable" because the record reflects that Dr. Maddali adjusted Claimant's medications and Claimant never improved. *Id.* Claimant also appears to suggest that the ALJ erred in finding that Dr. Maddali "did not tender a supporting explanation linking the opined limitations to objective signs." *Id.* at 15.

On review, I find that the ALJ's assessment of the medical opinions of Drs. Eyring and Maddali was both legally sufficient and supported by substantial evidence. First, as an initial

matter, the ALJ's consideration of Dr. Eyring and Dr. Maddali's opinions comported with the requirements of the new Social Security Regulations because the ALJ articulated the evidence affecting the supportability and consistency of each medical opinion and determined whether such opinion was supported by the weight of the record evidence.

Second, although Claimant appears to argue to the contrary, the ALJ's finding that Dr. Eyring's contemporaneous examination findings were "grossly unremarkable," is supported by the record. In particular, as noted by the ALJ, Dr. Eyring observed intact reasoning skills, good social judgment, average intellectual functioning, capacity to name current and former presidents, and the ability to name objects. R. 20 (citing Exhibit 2F, at 3 (R. 284)). Although Claimant appeared "somewhat confused" about the location of the interview, the ALJ correctly noted that Dr. Eyring did not report clinical evidence of deficits in concentration, persistence, pace, memory, or comprehension. *See id.*; R. 284, 285 (Exhibit 2F). While Claimant points to Dr. Maddali's examination findings in an attempt to undermine the ALJ's conclusion, *see* Doc. No. 18, at 13, the ALJ did not cite Dr. Maddali's records in support of those findings, instead citing to Dr. Eyring's own contemporaneous records in support. *See* R. 20 (citing Exhibit 2F). Accordingly, Claimant has not established that the ALJ mischaracterized the record regarding her discussion of Dr. Eyring's contemporaneous examination findings.

Third, I find no error in the ALJ stating that Claimant's treatment with Dr. Maddali was "conservative." Specifically, Claimant saw Dr. Maddali once approximately every three months or more, only for 15 to 20-minute medication appointments. *E.g.*, R. 296–306. The ALJ also noted that Dr. Maddali maintained Claimant on the same medication dosages of Wellbutrin, alprazolam, Ritalin, and Brintellix from April 2016 through May 2018. R. 18 (citing Exhibits 4F, 13F (R. 302–03, 371–72)). This finding is supported by substantial evidence. *See also* R. 311,

313, 344, 346, 348. And, as the ALJ found, Dr. Maddali's treatment notes do not reflect that he referred Claimant to supplemental counseling, admitted him for inpatient treatment, or recommended a community-based psychosocial rehabilitation program. R. 18. Claimant's treatment with Dr. Maddali, therefore, can reasonably be considered conservative in nature. *See, e.g.*, *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 861–62 & n.3 (11th Cir. 2017) (finding record that claimant underwent 15-minute medication appointments reflected conservative treatment, and that the ALJ could consider that while treating the claimant, the provider "did not recommend a more frequent or intense treatment plan than monthly medication management appointments").

Fourth, I likewise find no error in the ALJ characterizing Dr. Maddali's examination findings as "stable." Claimant does not address the ALJ's notations that Dr. Maddali found that Claimant's short-term memory, long-term memory, abstraction ability, and associations were intact across all exams from July 2015 through August 2018. R. 17 (citing Exhibits 4F, 6F, 12F, 13F). These findings are supported by the record. *See* R. 296, 298, 300, 302, 305, 311, 354, 355, 369, 371. The ALJ also correctly noted that Dr. Maddali consistently described Claimant's cognitive functioning as "normal," and that Claimant had the intact ability to perform arithmetic calculations, demonstrating his ability to apply information. *See id.* Dr. Maddali likewise only documented Claimant's complaints of difficulty with motivation infrequently. *See id.* And, the ALJ found that although Dr. Maddali characterized Claimant as appearing depressed and glum, Dr. Maddali also found that Claimant maintained fair insight and judgment across all exams from July 2015 through August 2018. R. 18. These findings are supported by the records cited by the ALJ in support.

*See* R. 296, 298, 300, 302, 305, 311, 354, 355, 369, 371. In sum, the records cited by the ALJ support the ALJ's characterization of Dr. Maddali's examination findings as stable.[4]

Finally, to the extent that Claimant suggests that the ALJ was required to give more weight to Dr. Maddali's opinion as a treating source, that requirement no longer appears in the current regulations. *See* 20 C.F.R. § 404.1520c(a) (the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."). Therefore, the ALJ was not required to defer to the opinions of Dr. Maddali over those of Dr. Eyring, and Claimant's suggestions to the contrary are unavailing.[5]

Accordingly, I find Claimant's sole assignment of error unpersuasive.

## V. CONCLUSION.

Based on the foregoing, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is **DIRECTED** to enter judgment in favor of the Commissioner and **CLOSE** the case.

---

[4] Claimant points to evidence in the record which he claims supports a contrary conclusion than that reached by the ALJ (*i.e.*, that his medication was adjusted five times, that he reported significant fatigue and difficulty with motivation, that he had a glum and flat affect, was tense and anxious, and although attentive and communicative, his thought content was depressed). Doc. No. 18, at 14 (citing R. 313, 346, 348, 355, 369, 371). What Claimant is in essence asking the Court to do is to reweigh the evidence. However, the Court may not reweigh the evidence or substitute its judgment for that of the Commissioner because, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm the decision if it is supported by substantial evidence. *See Bloodsworth*, 703 F.2d at 1239.

[5] I note that Claimant also seems to suggest in the Joint Memorandum that the ALJ erred in finding that Dr. Maddali "did not tender a supporting explanation linking the opined limitations to objective signs." Doc. No. 18, at 15. Even assuming this would constitute error, which I do not so find, I would find any error harmless on the facts of this case. The ALJ stated several other good cause reasons for discounting Dr. Maddali's opinions, each of which are supported by substantial evidence. *Cf. D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 948 (11th Cir. 2010) (finding no reversible error in consideration of opinion of treating physician where "ALJ articulated at least one specific reason for disregarding the opinion and the record support[ed] it.").

**DONE** and **ORDERED** in Orlando, Florida on August 24, 2020.

_____
LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record